IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BOISE TOWER ASSOCIATES, LLC, a Washington Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) |
| WASHINGTON CAPITAL JOINT MASTER TRUST MORTGAGE INCOME FUND, et al., | ) ) ) ) |
| Defendants. | ) |

**CASE NO. 03-141-S-MHW**

**MEMORANDUM DECISION AND ORDER**

Currently pending before the Court are the Motion for Attorney Fees, Docket No. 317, and Motion for Taxation of Costs, Docket No. 319, filed by Defendants Washington Capital Joint Master Trust, Washington Capital Management, Inc., and BNY Western Trust Company (collectively, "WCM"). Pursuant to the Court's Order, Docket No. 313, WCM has elected to address its entitlement to attorney fees prior to submitting a memorandum and affidavits regarding the amount and reasonableness of claimed attorney fees. The Court heard oral argument on November 7, 2007, and took the matters under advisement. After careful consideration of the parties' arguments and written submissions, the Court will deny WCM's motions for the reasons discussed below.

**Memorandum Decision and Order - Page 1**

# I.
## Background

On April 2, 2007, the Court issued its Memorandum Decision and Order finding that WCM was entitled to summary judgment on counts one and two of Boise Tower Associates, LLC's ("BTA") complaint alleging breach of contract and breach of the covenant of good faith and fair dealing.  Docket No. 307.[1]  Thereafter, the parties stipulated to dismiss WCM's counterclaim, and the Court entered final judgment in favor of WCM on July 6, 2007.  Docket No. 315.

WCM filed a motion under Fed. R. Civ. P. 54(d)(2) and Dist. Idaho Loc. Civ. R. 54.2 seeking attorney fees pursuant to Idaho Code § 12-120(3) as the prevailing party.[2]  WCM also filed a motion seeking non-taxable costs under Dist. Idaho Loc. Civ. R. 54.1(c)(8), requesting $207,838.43.  Docket No. 319.[3]

---

[1]  The Court also denied BTA's second motion for partial summary judgment, Docket No. 249.

[2]  WCM also claims fees are owed under Idaho Code § 12-121.  For fees to be awarded under Idaho Code § 12-121, BTA's claims must be frivolous, unreasonable, or without foundation. *Thomas v. Madsen*, 132 P.3d 392, 396 (Idaho 2006).  If there is a legitimate triable issue of fact or issue of law, attorney fees may not be awarded under Idaho Code § 12-121 even if the losing party asserted factual or legal claims that were frivolous, unreasonable, or without foundation. *Thomas*, 132 P.3d at 396.  WCM presented no argument or supporting facts in its memorandums, Docket Nos. 317, 330, that BTA pursued its claims frivolously or unreasonably.  Accordingly, the Court finds that WCM waived any right it may have had to assert fees under that statute.

[3]  These discretionary costs are in addition to the costs outlined in WCM's Bill of Costs, Docket No. 318, requesting $33,613.16.  BTA did not file an objection to WCM's Bill of Costs and there is no overlap between the two requests.

**Memorandum Decision and Order - Page 2**

## II.
## Discussion

**A.      WCM's Motion for Attorney Fees.**

WCM argues it is entitled to attorney fees under Idaho law and cites *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421, U.S. 240 (1975) for support.[4]  In that case, the Supreme Court held that a court sitting in diversity must apply the forum state's attorney fee law if it does not conflict with any federal law, and it represents the "substantial policy" of the state.  *Alyeska Pipeline Serv. Co.*, 421 U.S. at 260, n.31.  WCM argues that Idaho Code § 12-120(3) applies, which provides that the prevailing party "shall" be allowed a reasonable attorney fee if the action is one to recover in any "commercial transaction."  An award under § 12-120(3) is mandatory. *Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1106 (Idaho Ct. App. 2004).  WCM further contends that a conflict of law analysis is not required under *Alyeska*, and that even if it is required, Idaho has the most significant relationship to the issue of attorney fees, citing *Arno v. Club Med Boutique, Inc.*, 134 F.3d 1424 (9th Cir. 1998).

While BTA agrees state law applies, it argues that the Court's choice of law analysis utilized in its Memorandum Decision and Order, Docket No. 248, applies with equal force to the issue of attorney fees.  Accordingly, BTA contends that Washington state law applies.  Not surprisingly, under Washington law the prevailing party is not automatically entitled to attorney fees.  Washington courts may not award attorney fees unless there is a contract, statute, or recognized equitable exception.  *City of Seattle v. McCready*, 931 P.2d 156, 160 (Wash. 1997).

---

[4]  At oral argument, WCM directed the Court to *Ward v. Puregro Co.*, 913 P.2d 582 (Idaho 1996).  The Court finds that case inapplicable here.  *Ward* involved a contract with an explicit choice of law provision, which the court honored as part of the parties' agreement.  *Ward*, 913 P.2d at 584.  The parties in this case had no such provision in their contract.  *See* First Am. Compl., Ex. A, Docket No 67.

**Memorandum Decision and Order - Page 3**

There is no corresponding statute applicable in Washington that would award attorney fees to the prevailing parties in this case, and thus BTA asserts each party must bear its own costs and fees.[5]

The Court finds that the *Alyeska* criteria are met.  There is no conflict between state law and federal law concerning entitlement to attorney fees.  And, it has been previously held that Idaho's fee statutes represent a substantial policy of the state of Idaho.  *Lockheed Martin Idaho Technologies Co. v. Lockheed Martin Advanced Environ. Sys., Inc.*, 2006 WL 2095876 *2, Case No. CV 98-316-BLW (D. Idaho July 27, 2006).  However, a choice of law analysis is required, because Idaho courts have determined that Idaho Code § 12-120(3) is a substantive law that enlarges the rights of litigants in a commercial transaction.  *Griggs v. Nash*, 775 P.2d 120, 127 (Idaho 1989);  *Myers v. Vermaas*, 753 P.2d 296, 298 (Idaho Ct. App. 1988).  Consequently, the Court is directed to turn to the substantive law of the forum state, including its choice-of-law rules, to ascertain the applicable state law governing the parties' entitlement to attorney fees.[6]  *See Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir. 1988) ("If the issue is 'substantive' – concerned with the legal rights of the parties– then a choice of law analysis must be made.").

---

[5]  Wash. Rev. Code § 4.84.330 allows the prevailing party in any action on a contract to be awarded reasonable attorney fees if the "contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease," are recoverable.  The Loan Commitment Letter BTA alleged WCM breached had no such provision, and so this statute is inapplicable.  *See* First Am. Compl., Docket No 67, Exhibit A.

[6]  WCM would have the Court ignore the choice-of-law issue in its entirety, relying upon *Alyeska* and *Lockheed*.  Neither *Lockheed* or *Alyeska*, however, presented a choice-of-law issue affecting entitlement to attorney fees.  The Court in *Lockheed* noted that if a conflict-of-law issue was present, the Court would have to consider it.  *Lockheed*, 2006 WL 2095876 at *2 n.1 (considering a conflict-of-laws analysis, but declining to apply it because there was no conflict present in that case).  The same conflict-of-law analysis is required in this case when the litigants are arguing whether Idaho or Washington law applies to determine entitlement to attorney fees in a breach of contract matter.  *See McMahan v. Toto*, 256 F.3d 1120, 1131–32 (11th Cir. 2001) (explaining that if the matter is substantive, the law of the state, including its choice-of-law rules, applies and considering *Alyeska* only in the context of whether the state law conflicted with a federal statute or rule).

**Memorandum Decision and Order - Page 4**

Idaho's and Washington's attorney fee statutes are different, and so a choice must be made.  As the Court discussed in its July 22, 2006 Memorandum Decision and Order, Docket No. 248, Idaho applies the most significant relationship test in resolving conflict of law issues as set forth in RESTATEMENT (SECOND) CONFLICTS OF LAWS , although it has not adopted the Restatement formulation in full.  *Barber v. State Farm Mut. Ins.*, 931 P.2d, 1195, 1199 (Idaho 1997).  *See also Grover v. Isom*, 53 P.3d 821 (Idaho 2002); *Rungee v. Allied Van Lines, Inc.*, 449 P.2d 378 (Idaho 1968); *DeMeyer v. Maxwell*, 647 P.2d 783 (Idaho Ct. App. 1982).  "The goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that issue." *Suebert Excavators Inc. v. Anderson Logging Co.,* 889 P.2d. 82, 85 (Idaho 1995).

Both the underlying action upon which WCM sought summary judgment and the agreement between them and their Idaho attorneys are contracts, requiring the Court to examine: 1) the domicile, residence, nationality, place of incorporation, and place of business of the parties; 2) the place of negotiations of the contract; 3) the place of contracting; and 4) the place of performance; and 5) the location of the subject matter of the contract.  RESTATEMENT (SECOND) CONFLICTS OF LAWS § 188 (1971).

Once the factual contacts between the parties are identified, the court then conducts an analysis to determine which state has the most significant relationship to the transaction by considering the following policies:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971).  *See also Rungee v. Allied Van Lines, Inc.*, 449 P .2d 378, 383 (Idaho 1968) (citing the Restatement).

In support of its argument that Idaho law applies to the issue of attorney fees, WCM argues that an issue by issue analysis is required and that the Courts previous decision applying Washington law to the contract does not necessarily drive the conclusion that Washington law applies to the question of an award of attorney fees.  WCM contends that Idaho has the most significant relationship because the attorney fees were generated in Idaho, the parties contracted with Idaho lawyers, and BTA chose the forum.  BTA counters that this Court's prior determination that Washington law applies to the contract is conclusive on this issue.  Under Idaho law, BTA argues that Idaho Code § 12-120 is "adjunct" to the contract between the parties and cites *Myers v. Vermaas*, 753 P.2d 296 (Idaho Ct. App. 1988) for the proposition that § 12-120 becomes a part of any commercial transaction in Idaho whether the parties intended to or not.  BTA therefore contends it is improper to apply an Idaho substantive fee provision as an adjunct to another state's contract.

The Court agrees with BTA's analysis on this point.  Contracts negotiated in Idaho would be governed by the holding in *Myers* that, in commercial litigation, Idaho Code § 12-120(3) would be adjunct to the underlying contractual agreement.  In *Myers,* the Idaho Court of Appeals noted:

**Memorandum Decision and Order - Page 6**

> Unlike I.C. § § 12-121 and 61-617A, I.C. § 12-120 provides for a *mandatory*, not discretionary, award of attorney fees to the prevailing party in commercial litigation.  The automatic nature of an award under I.C. § 12-120 makes it, in effect, an adjunct to the underlying commercial agreement between the parties.  It establishes an entitlement.  In this respect, an award under the statute is closely akin to other "contractual or vested" rights contained in the agreement itself.

*Id.* at 298.  While parties to a contract executed in Idaho and governed by Idaho law can avail themselves of § 12-120, the converse is not true.  A contract entered into between parties in another state would not automatically have a substantive Idaho statutory fee component in their commercial agreements.  It would be unreasonable to conclude otherwise.

With that said, the law governing liability for the underlying cause of action, *e.g.* breach of contract, does not automatically control the fee issue.  For example, in *Rungee v. Allied Van Lines, Inc.*, 449 P.2d 378 (Idaho 1968), the court was presented with a choice between Florida and Idaho law involving enforcement of an insurance contract and an award of attorney fees under the contract to the prevailing party.  In that case, although the insurance contract was executed in Florida, the prevailing party sought fees under Idaho's insurance enforcement statute.  *Rungee*, 449 P.2d at 381.  Florida had no statute under which attorney fees would be awarded.  The court viewed the issue involved in that case as which state— Florida or Idaho— had the greater concern for the protection of an insured's contractual rights when the insurance contract applied to the interstate transfer of goods delivered to Idaho.  *Id.* at 383–84.  The court determined that Idaho had the more significant relationship to the transaction and the parties involved in that case, and therefore permitted the plaintiff to seek fees under the Idaho insurance enforcement statute at issue.  *Id.* at 384.  *See also MRO Communications, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) (applying the law of the forum state to determine whether a party was entitled to attorney fees in an action involving a choice between Nevada and

New Jersey law); *Barber v. State Farm Mut. Auto. Ins. Co.*, 931 P.2d 1195 (Idaho 1997)

(following *Rungee*, and reasoning under the same insurance statute considered in *Rungee* that

Washington law applied to determine the issue of attorney fees).

　　In *Arno v. Club Med Boutique Inc.*, 134 F.3d 1424 (9th Cir. 1998), the Ninth Circuit

considered a tort action brought by a California resident injured while working at a resort in a

territory governed by French law.  In its previous decision, the court determined that the law of

the place where the tort occurred, in this case a French territory, rather than the law of

California, the forum state, governed the substantive issues in the case.  *Arno*, 22 F.3d at1468.

However, when the plaintiff sought attorney fees, the court concluded that the law governing

liability for the tort action did not control the fee issue, independently considered the choice-of-

law issue, and held that California had the most significant interest in the manner in which the

Plaintiff's attorney was compensated.  *Id.* at 1426.  *See also McMahan v. Toto*, 256 F.3d 1120,

1135 (11th Cir. 2001) (deciding attorney fee issue independently of underlying tort claim under

Florida's choice of law rules).

　　Accordingly, the Court must undertake an independent choice-of-law analysis.  Applied

to the issue of attorney fees in the present case, the Court previously considered that, as to the

underlying contract action, the majority of the factors favored applying Washington law.  All of

the parties resided in Washington, although Mr. Peterson  maintained residences both in Idaho

and Washington, and BTA had a business office in Boise.  The loan agreement was negotiated in

Washington, executed in Washington, and was to be performed in Washington.  BTA, however,

availed itself of an Idaho forum under the principles of diversity.  BTA's choice of forum

**Memorandum Decision and Order - Page 8**

required the parties to either hire Idaho counsel or out-of-state counsel to associate with local Idaho counsel.

As to the agreements between WCM and Idaho counsel, these contracts on their face would appear to favor application of Idaho law.  WCM argued that *Arno* favored such a result, because the employment contracts were negotiated, executed, and performed in Idaho, and the fees were generated in Idaho.  However that argument has only superficial appeal if the Court were inclined to constrain itself to considering the place where the fee agreement was entered into as the controlling the issue.

But the Court is not being asked to enforce the contract between WCM and Idaho counsel.[7]  Rather, the Court determined the litigants' rights under a Washington contract that Idaho lawyers were hired to enforce.  Considering the matter in that context, the law favors application of Washington law to the issue of entitlement to attorney fees because of the policies articulated in § 6 of the Restatement.  *See Grover v. Isom*, 53 P.3d at 825 (looking at the underlying policies to support its determination that Oregon law applied in a tort action).  Although WCM hired Idaho counsel and litigated in the District of Idaho, counsel represented WCM in a suit alleging breach of a contract formed in Washington.

While the parties should certainly be free to avail themselves of Idaho's courts and to hire counsel of their choice, it would not be proper for that decision to ultimately dictate the

---

[7] *Arno* is distinguishable, because the plaintiff and her lawyer had entered into a contingent fee agreement. Despite the contingent fee agreement, Arno filed a fee application seeking reimbursement of attorney fees from the defendant rather than pay her attorney from the settlement proceeds.  *Arno*, 134 F.3d at 1425.  Although the Ninth Circuit did not elaborate, it noted that contingent fee arrangements were not honored under French law, the law governing the tort action.  *Arno*, 134 F.3d at 1426.  Thus, the court was being asked to enforce an employment agreement between Arno and her attorney, and it found California law governing contingent fee agreements applied. *Arno*, 134 F.3d at 1426.

**Memorandum Decision and Order - Page 9**

application of an Idaho substantive statute providing for attorney fees based upon that choice, when the substantive law of Washington governs the underlying contract.  In other words, the parties are not entitled to attorney fees under an Idaho substantive statute that enlarges the rights of litigants to a commercial dispute when the law governing the contract denies litigants that right.  Washington's fee statute would not award attorney fees to a litigant in a contract dispute unless the contract specifically provided for such an award.  Wash. Rev. Code § 4.84.330.  Nor can parties litigating breach of contract actions in Washington courts avail themselves of Idaho Code § 12-120(3), and thus neither should these litigants.  If the Court were to hold otherwise, the decision  would impact the important policies concerning attorney fees articulated by the state of Washington in its statutes.

Litigants in an Idaho forum should also not be subjected to potentially uncertain results. In cases where it is clear that another state's substantive law applies to the contract governing the parties, they should expect that the other state's substantive law concerning entitlement to attorney fees applies.  Attorney fee statutes, especially when they enlarge the rights of litigants to a commercial contract dispute, should not be applied based upon the choice of forum or the choice of attorney.  To do so would promote forum shopping among those litigants that could avail themselves of diversity jurisdiction in Idaho when their particular agreement did not contain a provision awarding attorney fees to a prevailing party and further assuming that under the law of their state, fees would not be otherwise recoverable.  Prevailing litigants seeking fees in a contract dispute governed by Washington law that would otherwise be litigated in a Washington court but for invocation of diversity jurisdiction should be limited to Washington

**Memorandum Decision and Order - Page 10**

substantive statutes governing availability of attorney fees as well.  To hold otherwise would interject uncertainty, unpredictability, and non-uniform results.

Accordingly, WCM's motion regarding its entitlement to attorney fees under Idaho Code § 12-120(3) will be denied.

**B.      WCM's Motion for Non-Taxable Costs.**

In addition to attorney fees, WCM also seeks non-taxable costs in the amount of $207,838.43 as the prevailing party under Fed. R. Civ. P. 54(d)(1) and Dist. Idaho Loc. Civ. R. 54.1(c)(8).  18 U.S.C. §§ 1920 and 1821 grant the Court authority to assess costs in cases before it.  Fed. R. Civ. P. 54(d)(1) implements those statutes and provides that "[e]xcept when express provision is made either in a statute of the United States or in these rules, costs other than attorney fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"  The corresponding local rule defines a prevailing party as "the one who successfully prosecutes the action or successfully defends against it, prevails on the merits of the main issue, and the one in whose favor the decision or verdict is rendered and judgment entered."  Dist. Idaho Loc. Civ. R. 54.1(b).  As a threshold issue, BTA does not dispute that WCM prevailed in the litigation.

WCM seeks costs in addition to those enumerated in the local rule under subsection (c)(8), which allows recovery of  "other items" not listed in the rule with prior court approval. Dist. Idaho Loc. Civ. R. 54.1(c)(8).  The local rule does not define appropriate "other" costs. BTA objects overall to the costs claimed, asserting WCM has no legal authority explaining what constitutes appropriate "other costs" under Dist. Idaho Loc. Civ. R. 54.1(c)(8) and relying upon Idaho R. Civ. P. 54(d)(1)(D) for guidance.  Idaho R. Civ. P. 54(d)(1)(D) allows for a party to

recover discretionary costs when that party proves the costs are "necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." BTA claims that these costs were not "exceptional," and so should not be awarded.  WCM argues if state law applies for guidance, Washington law should be used.

Despite the absence of federal guidance concerning "other" costs, federal procedural law, not state law, governs the award of costs even though the issues, including attorney fees, were decided under Washington state law.  *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995) (deciding the issue of costs under federal law although California law governed the substantive issues).  This premise has been followed for over a century.  *Dodge v. Tulleys*, 144 U.S. 451, 457 (1892) (noting that state law "does not determine the procedure of courts of the United States . . . or the costs which are taxable there[.]").  Contrary to the arguments advanced by both parties, there is no need to look to either Washington or Idaho procedural statutes governing the award of costs.

The non-taxable costs WCM seeks consist of the following: (1) computerized research, $8,981.85; (2) out of town travel, $9,844.64; (3) expert witness fees, $164,383.53; (4) outside printing costs, $8,724.84; (5) digital discovery, $3,776.82; (6) in-house printing costs, $10,354.04; (7) long distance telephone charges, $1,592.03; and (8) PACER access fees, $180.68.[8]

---

[8] WCM has reduced the actual amounts of costs claimed for all costs except expert witness fees by fifty percent.  Defs.' Pet. at 2–3.  The costs stated represent the amounts claimed after the reduction.

**Memorandum Decision and Order - Page 12**

1.    **Expert Witness Fees.**

At the hearing, WCM stated that it was withdrawing the claim for reimbursement of expert witness fees.  It appears WCM has already asked for the statutory witness fees in the Bill of Costs, Docket No. 318, and so the request for additional expert witness fees will be denied.

2.    **Printing Costs.**

WCM seeks outside and in-house printing costs in addition to those costs outlined in the Bill of Costs, Docket No. 318, arguing that the Court may interpret 28 U.S.C. § 1920 as encompassing those costs.  *See Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (holding that *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) "does not prevent courts from interpreting [28 U.S.C.]§ 1920."); *Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990) (allowing printing costs at 50% of total costs under California local rules).  28 U.S.C. § 1920(3) permits the Court to award "fees" for "printing" with no limitation as to what those costs must relate to, while 28 U.S.C. § 1920(4) allows "fees" for copies of papers necessarily obtained for use in the case.  BTA argues that such costs were not "exceptional," and so should be disallowed.

While the Court agrees *Alflex* and *Haagen-Dazs* held that the court has some leeway in interpreting what costs would be allowed under 28 U.S.C. § 1920, in those cases the court's local rules allowed for the costs claimed.  For example, in *Haagen-Dazs*, the court upheld the award of costs for fifty percent of the plaintiff's cost of reproducing documents even though they were not introduced in support of the plaintiff's motion for summary judgment because the local rules allowed "the cost of reproducing documents obtained [in discovery] and used for any purpose in the case[.]"  *Haagen-Dazs Co., Inc.*, 920 F.2d at 588.  Similarly, in *Alflex*, the court upheld an

**Memorandum Decision and Order - Page 13**

award of costs for the cost of the original and one copy of all depositions because the local rule allowed it.  *Alflex Corp.*, 914 F.2d at 176.

In this district, the Court has chosen to limit costs for copies to those attached to a document required to be filed and served.  Dist. Idaho Loc. Civ. R. 54.1(c)(5).  "The cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not taxable." *Id*.  The cost of visual aids is taxable "if they are admitted into evidence."  Dist. Idaho Loc. Civ. R. 54.1(c)(6).  Also, the court is expressly limited to tax costs in conformity with 28 U.S.C. §§ 1920–1923.  Dist. Idaho Loc. Civ. R. 54.1(c).  In the absence of an award of attorney fees such that these costs could be included in the award, the Court finds that the local rule expressly limits an award of such costs, and WCM is not entitled to claim costs for excess copying and printing other than what is enumerated in the local rule.  Since WCM has already included those costs in their Bill of Costs, Docket No. 318, additional copy and printing charges are disallowed.

**3.      Miscellaneous Other Costs.**

WCM argues that other costs claimed for computerized research, out of town travel, digital discovery, long distance telephone charges, and PACER access fees were reasonably and necessarily incurred.  WCM contends that these costs are properly awarded as part of an attorney fee award.  Defendant disagrees, arguing that since attorney fees are not recoverable under Washington law, these discretionary costs may not be awarded because they are not properly taxed as part of attorney fees.

This Court considers computer-aided research, like any other form of legal research, a component of attorney fees that should not always be independently taxed as an item of cost. *See Goff v. Washington County, et al.*, Case No. CV 03-268-MHW (April 10, 2006), *cited in*

**Memorandum Decision and Order - Page 14**

*Gomez v. Mastec North Am., Inc.*, Case No. CV 03-421-MHW (Dec. 13, 2006).  The Court determined that attorney fees are not recoverable under Washington law, and so costs for computerized research may not be taxed.  Nor could the Court find authority for the taxing as costs for out of town travel, long distance telephone charges, PACER fees, or digital discovery in an instance where attorney fees were not recoverable, and so finds that those costs are not appropriate.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)     Defendants' Motion for Attorney Fees (Docket No. 317) is DENIED.

2)     Defendants' Petition for Non-Taxable Costs (Docket No. 319) is DENIED.

DATED: December 10, 2007

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge